IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| KELVIN D. PEACOCK, #187315, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | CASE NO. 2:18-CV-151-RAH-JTA (WO) |
| JAMES JACKSON, *et al.*, | ) ) | |
| Defendants. | ) | |

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I. INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on a complaint filed on

March 6, 2018, by Kelvin Peacock, an indigent state inmate, challenging actions which

occurred at Kilby Correctional Facility.  (Doc. 1).  By order dated May 3, 2018, this court

ordered the plaintiff to file an amended complaint because his original complaint was "a

shotgun pleading in that it sets forth an excessive number of facts with no clear organization

for the purpose of describing plaintiff's causes of action against the named defendants."

(Doc. 13 at p. 1).  The court also informed the plaintiff that "the court will consider only

those claims set forth in the amended complaint."  (Doc. 13 at p. 4).  Thereafter, Peacock

filed an amended complaint challenging actions that took place on February 9, 2017, at

---

[1] All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

Kilby Correctional Facility.  (Doc. 21 at p. 2).  Specifically, Peacock alleges that the defendants acted with deliberate indifference because they subjected him to excessive force on the morning of February 9, 2017, when they were transferring him by car from the prison to court.  He further alleges that they failed to protect him from an unsafe transfer condition.  (Doc. 21 at pp. 5-6).

The named defendants are correctional officers John C. Hudson, Michael L. Calloway, Jeremiah Ousley, Heath Truman, James Jackson, and Sheriff Dennis Meeks. Peacock seeks declaratory and injunctive relief and monetary damages in this cause of action from the defendants.  He does not specify whether he sues them in their individual or official capacities.  (Doc. 21 at p.7).

The defendants filed special reports (Doc. 38, Exs. 1-3; Doc. 39, Exs. 1-6) and a supplemental special report (Doc. 49, Ex. 1) which included relevant evidentiary materials in support of these reports, specifically affidavits, prison documents, and a video recording of the incident, addressing the claims presented by Peacock.  The court has watched the video carefully multiple times.  Furthermore, the court ordered the defendants to provide the plaintiff an opportunity to view this video.  (Doc. 42).

In these documents, the defendants deny they acted with deliberate indifference to Peacock's safety needs and deny they used excessive force against him.  After reviewing the special reports and exhibits, the court issued an order on December 20, 2018, requiring Peacock to file a response to the defendants' special report, supported by affidavits or

statements made under penalty of perjury and other evidentiary materials.  This order specifically cautioned that "**unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special reports and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." (Doc. 53 at p. 2).  Peacock filed a response to this order.  (Doc. 65, Ex. 1).  Pursuant to the directives of the order entered on December 20, 2018, the court now treats the defendants' special report and supplements thereto as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law.'"  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (per curiam) (citation to former rule omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to

any material fact and the movant is entitled to judgment as a matter of law.").[2]  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials, and affidavits], which it believes demonstrate the absence of a genuine [now dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Williamson Oil Company, Inc. v. Phillip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003) (holding that moving party bears the initial burden of establishing there is no genuine dispute as to any material fact); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (same).  The movant may meet this burden by presenting evidence indicating there is no dispute of material fact or by demonstrating that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof.  *Celotex*, 477 U.S. at 322–24.  The moving party discharges his burden by showing that the record lacks evidence to support the nonmoving party's case or that the nonmoving party would be unable to prove his case at trial.  *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011)

---

[2] Although Rule 56 underwent stylistic changes in 2010, the revision of "[s]ubdivision (a) carries forward the summary-judgment standard expressed in former subdivision (c), changing only one word — genuine 'issue' becomes genuine 'dispute.'  'Dispute' better reflects the focus of a summary-judgment determination."  *Id*.  "'Shall' is also restored to express the direction to grant summary judgment."  *Id*.  Despite these changes, the substance of Rule 56 remains the same and, therefore, all cases citing prior versions of the rule remain equally applicable to the current rule.

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact by [citing to materials in the record including affidavits, relevant documents, or other materials] the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."). Once the moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or sworn statements], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact. *Jeffery*, 64 F.3d at 593–94 (internal quotation marks omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Public Education for Bibb County*, 495 F.3d 1306, 1313 (11th Cir. 2007). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to

5

the views of prison authorities.  Unless a prisoner can point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage."  *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted).

To proceed beyond the summary judgment stage, an inmate-plaintiff may not rest upon his pleadings but must produce "sufficient [favorable] evidence" which would be admissible at trial supporting each essential element of his claim.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  "If the evidence [on which the nonmoving party relies] is merely colorable . . . or is not significantly probative . . . summary judgment may be granted."  *Anderson*, 477 U.S. at 249–50.  "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party."  *Walker v. Darby*, 911 F.2d 1573, 1576–77 (11th Cir. 1990) (internal citation omitted).  Conclusory allegations based on a plaintiff's subjective beliefs are likewise insufficient to create a genuine dispute of material fact and, therefore, do not suffice to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir. 1995) (holding that grant of summary judgment is appropriate where inmate produces nothing beyond "his own conclusory allegations" challenging actions of the defendants); *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment."); *Evers v. General Motors Corp.*, 770 F.2d 984, 986 (11th Cir. 1985)

("[C]onclusory allegations without specific supporting facts have no probative value."). Hence, when a plaintiff fails to set forth specific facts supported by requisite evidence sufficient to establish the existence of an element essential to his case and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322 ("[F]ailure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."); *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607, 609 (11th Cir. 1987) (If on any part of the prima facie case the plaintiff presents insufficient evidence to require submission of the case to the trier of fact, granting of summary judgment is appropriate.); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (holding that summary judgment is appropriate where no genuine dispute of material fact exists). At the summary judgment stage, this court must "consider all evidence in the record . . . [including] pleadings, depositions, interrogatories, affidavits, etc. — and can only grant summary judgment if everything in the record demonstrates that no genuine [dispute] of material fact exists." *Strickland v. Norfolk Southern Railway Co.*, 692 F.3d 1151, 1154 (11th Cir. 2012).

For summary judgment purposes, only disputes involving material facts are relevant. *United States v. One Piece of Real Property Located at 5800 SW 74th Avenue, Miami, Florida*, 363 F.3d 1099, 1101 (11th Cir. 2004). What is material is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248. "Only factual

disputes that are material under the substantive law governing the case will preclude entry of summary judgment." *Lofton v. Secretary of the Department of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citing *Anderson*, *supra*).

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In cases where the evidence before the court, which is admissible on its face or which can be reduced to admissible form, indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24. A court may grant summary judgment where the pleadings, evidentiary materials, and affidavits before the court show there is no genuine dispute as to a requisite material fact. *Id*. To establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a

verdict in his favor.  *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279

(11th Cir. 2001).  "When opposing parties tell two different stories, one of which is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary

judgment."  *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the

nonmoving party and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant

does not escape the burden of establishing by sufficient evidence a genuine dispute of

material fact.  *Beard*, 548 U.S. at 525, 126 S. Ct. at 2576; *Brown v. Crawford*, 906 F.2d

667, 670 (11th Cir. 1990).  Thus, Peacock's *pro se* status alone does not mandate this

court's disregard of elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of all the evidence

contained in the record.  After such review, the court finds that Peacock has failed to

demonstrate a genuine dispute of material fact in order to preclude entry of summary

judgment in favor of the defendants.

### III.  FACTS

In his amended complaint, the plaintiff alleges that the defendants subjected him to

excessive force when they forced him into a patrol car from his wheelchair for the purpose

of transporting him from prison to court.  He claims that he offered no resistance to the

defendants' orders to get in the patrol car.  Rather, his handicap -- a "dislocated spine" --

made him "unable to walk or stand on his own" and prevented him from entering the patrol car. (Doc. 21 at p. 5). He further alleges that Defendant Officer Truman violated his constitutional rights by using a "stun device" on him when forcing him in the car and that after being tased Defendant Officer Truman "shoved his hand into plaintiff's abdomen pushing him down into the patrol car. Defendant Jackson went to the passenger side of the vehicle and grabbed plaintiff's handcuffs and dragged him across the seat, shoving his head forward and slamming the rear passenger door into his back." *Id.* He claims all this occurred even though he had "previously informed them of his dislocated spine [and advised that he was] unable to walk or stand on his own." *Id.* He also alleges that Defendant Officers failed to protect him because they exhibited "callous disregard for plaintiff's safety creating an unreasonable risk of injury in transportation condition." (Doc. 21 at p. 6).

The defendants deny that the plaintiff was subjected to excessive force or that they failed to protect him. Rather Defendant Officer Truman testified by affidavit as follows:

> On February 9, 2017, Correctional Officer James Jackson and I were notified to drive to Kilby Correctional Facility to pick up inmate Kelvin Peacock and to transport him back to the Covington County Jail for a Court appearance.

> When we arrived at the Kilby Correctional Facility, we were escorted to an area where Mr. Peacock was to be released.

> Mr. Peacock was in a wheelchair and was escorted to the back gate where our patrol vehicle was parked.

Mr. Peacock was wheeled to the back driver side door and he began stating that he was not getting into our patrol vehicle, as he was in need of a van for transportation.

I informed Mr. Peacock that I was not getting a van for his transportation and that he would be fine riding in our patrol vehicle.

At this time, Mr. Peacock was standing up at the open door of our patrol vehicle.

I informed Mr. Peacock that he was going to have to get in; however, he continued to refuse.

At this time, I informed Mr. Peacock that if he did not get inside of our patrol vehicle that I would be forced to use my Taser on him; yet again, Mr. Peacock continued refusing my orders.

I then went to the trunk of our vehicle and retrieved my Taser.  I took the cartridge off, and in an attempt to get Mr. Peacock into the back seat, I tased Mr. Peacock in the left thigh using the drive-stun mode.

Officer Jackson was on the passenger side of our vehicle and he pulled Mr. Peacock as I helped push him across the back seat.

I then shut the door and we left the facility.

Once Mr. Peacock was secured into our patrol vehicle, we transported him back to the Covington County Jail without further incident.

I did not use any measure of excessive force during this event.

(Doc. 39-2 at pp. 3-4).  Defendant Officer Jackson's affidavit testimony is consistent with the above-stated facts.  (Doc. 39-3 at pp. 3-4).

Additionally, the court has watched the video of this incident multiple times and concludes that the video evidence corroborates Defendant Officers' testimony.  Indeed, the

undisputed video evidence demonstrates that Defendant Officers brought Peacock by wheelchair to an open patrol car door and instructed him to get inside.  He refused. Defendant Officer Truman repeatedly told Peacock to enter the car and he repeatedly refused.  The plaintiff was pulled to a standing position at the rear driver's side door by Defendant Officers but he continued to refuse to enter the car, saying he had a herniated disk which prevented him from sitting in the car and sliding over in the backseat. Defendant Officer Truman offered to assist the plaintiff with getting into the car and getting positioned in the back seat.  After the plaintiff continued to protest and failed to comply, Defendant Officer Truman told the plaintiff he would tase him if he would not get inside the car.  The plaintiff again refused, stating "That's on you bro."  Defendant Officer Truman tased Peacock while putting him in the backseat of the vehicle, and Defendant Officer Jackson assisted Defendant Officer Truman from the passenger side by pulling Peacock across the seat while Defendant Officer Truman raised Peacock's legs and feet onto the seat.  Plaintiff remained alert after being tased, asked the officer for his name and then sarcastically thanked Defendant Officer Truman for hurting him.  Ultimately, the plaintiff was positioned in the car leaning against the passenger side door with his feet up in the backseat.  (Doc. 39-5).

## IV.  DISCUSSION

## A. ABSOLUTE IMMUNITY

To the extent Peacock requests monetary damages from the defendants in their

official capacities, they are entitled to absolute immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees].  There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity.  A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute.  Waiver may not be implied.  Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his official capacity unless the state has waived its Eleventh Amendment immunity, *see Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here.  The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity."  Ala. Const. Art. I, § 14.  The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849 (citing *Alabama v. Pugh,* 438 U.S. 781, 782 (1978) (consent is prohibited by the Alabama Constitution)).  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521,

1525 (11th Cir. 1990)).  Therefore, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official capacities.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Community College*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from state official sued in his official capacity).  The Court now turns to address the plaintiff's claims brought against the defendants in their individual capacities.

## B.  RESPONDEAT SUPERIOR

To the extent the plaintiff alleges that Sheriff Meeks is liable to him in his supervisory position based on a theory of respondeat superior, those claims must fail. Indeed, the law is well established; supervisory officials cannot be held liable in § 1983 actions under any theory of respondeat superior or vicarious liability.  *See, Belcher v. City of Foley,* 30 F.3d 1390, 1396-97 (11th Cir. 1994).  Thus, the Court concludes that the plaintiff's claims premised upon a theory of respondeat superior are due to be dismissed. Indeed, his allegations of injury are premised on the defendants' failure to keep him safe from an alleged assault which occurred when the plaintiff refused to enter the vehicle assigned to transport him from the prison to court.  Accordingly, the court will turn its attention to the plaintiff's deliberate indifference claims.

14

## C. DELIBERATE INDIFFERENCE

1. **<u>Standard of Review.</u>**  "A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of keeping dangerous men in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted).  Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health and safety when the official knows that the inmate faces "a substantial risk of serious harm" and with such knowledge disregards the risk by failing to take reasonable measures to abate it.  *Id*. at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk."  *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).  "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety."  *Farmer*, 511 U.S. at 834. "Within [a prison's] volatile community, prison administrators are to take all necessary steps to ensure the safety of . . . the prison staffs and administrative personnel. . . .  They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves."  *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984) (internal quotation marks omitted).  The Eleventh Circuit has, however, consistently stressed that a "prison custodian is not the guarantor of a prisoner's safety."  *Popham v. City of Talladega*, 908

F.2d 1561, 1564 (11th Cir. 1990); *Purcell ex rel. Estate of Morgan v. Toombs County*, *Ga.*, 400 F.3d 1313 (11th Cir. 2005) (same).  "Only [a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment." *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (internal quotation marks and citation omitted).  "[D]eliberate indifference describes a state of mind more blameworthy than negligence" and, therefore, ordinary lack of due care for a prisoner's health or safety will not support an Eighth Amendment claim.  *Farmer*, 511 U.S. at 837.  "In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation [under the Eighth Amendment], there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to a constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982).

The law is well settled that establishment of both objective and subjective elements are necessary to demonstrate an Eighth Amendment violation.  *Caldwell*, 748 F.3d at 1099. With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exist[ed]. Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner."  *Marsh v. Butler County, Ala.*, 268 F.3d 1014, 1028-29 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of

serious harm exists, and he must also draw the inference. . . .  The Eighth Amendment does not outlaw cruel and unusual conditions; it outlaws cruel and unusual punishments. . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837-38 (internal quotation marks omitted); *Campbell v. Sikes,* 169 F.3d 1353, 1364 (11th Cir. 1999) (citing *Farmer*, 511 U.S. at 838) ("Proof that the defendant should have perceived the risk, but did not, is insufficient."); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'"  *Farmer*, 511 U.S. at 834-38, 114 S. Ct. at 1977-80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S. Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . .  Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists – and the prison official must also "draw that inference."  *Farmer*, 511 U.S. at 837, 114 S. Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003).  A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . .  Each

17

individual Defendant must be judged separately and on the basis of what that person [knew at the time of the incident]."  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008).  Moreover, "[t]he known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference."  *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal quotation marks and citations omitted).  Thus, "[m]erely negligent failure to protect an inmate from attack does not justify liability under section 1983."  *Id*.  Even where a prison official perceives a serious risk of harm to an inmate, the official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted."  *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted).  In sum, prison officials cannot be held liable under the Eighth Amendment unless there is an objectively substantial risk of harm to an inmate, the defendants have knowledge of this substantial risk of harm and with this knowledge consciously disregard the risk.  *Farmer*, 511 U.S. at 837.

### 2.  Excessive Force

Claims of excessive force by prison officials against convicted inmates are governed by the Eighth Amendment's proscription against cruel and unusual punishment.  *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999).  "The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort repugnant to

the conscience of mankind." *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992) (internal quotations and citations omitted).  "'Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights.'" *Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir. 1973)).

The standard applied to an Eighth Amendment excessive force claim contains both a subjective and objective component. *Hudson*, 503 U.S. at 8.  The subjective component requires that prison "officials act[ed] with a sufficiently culpable state of mind." *Id.* (internal quotations omitted).  To establish the subjective element, a plaintiff must demonstrate the "necessary level of culpability, shown by actions characterized by wantonness." *Sims*, 230 F.3d at 21.  With respect to the objective component, a plaintiff must show that "the alleged wrongdoing was objectively harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8.  In addition, "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." *Id.* at 4.  "Injury and force . . . are only imperfectly correlated, and it is the latter that ultimately counts.  An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

Summarizing the excessive force standard in the prison context, the Eleventh Circuit wrote:

> [u]nder the Eighth Amendment, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986) (quoting *Johnson v. Glick*, 481 F.2d 1028, 1033 (2d Cir.1973)); *see also Hudson v. McMillian*, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992). To determine if an application of force was applied maliciously and sadistically to cause harm, a variety of factors are considered including: "the need for the application of force, the relationship between that need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response." *Hudson*, 503 U.S. at 7-8, 112 S. Ct. 995; *see also Whitley*, 475 U.S. at 321, 106 S. Ct. 1078; *Harris v. Chapman*, 97 F.3d 499, 505 (11th Cir. 1996). From consideration of such factors, "inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction of harm as is tantamount to a knowing willingness that it occur." *Whitley*, 475 U.S. at 321, 106 S. Ct. 1078 (quoting *Johnson*, 481 F.2d at 1033).

*Skrtich v. Thornton*, 280 F.3d 1295, 1300-1301 (11th Cir. 2002).

Recently, the Eleventh Circuit applied the *Whitley* factors in a §1983 action brought by a *pro se* prisoner for injuries he received during the inspection of his cell after he failed to follow an order from the defendant prison officers. *Miles v. Jackson,* 757 F. App'x. 828 (11th Cir. 2018). In *Miles,* the court identified the five factors relevant in determining whether force was applied "maliciously or sadistically" as "(1) the need for the application of force; (2) the relationship between that need and the amount of force used; (3) the threat

'reasonably perceived by the responsible officials,' . . . (4)'any efforts made to temper the severity of the use of a forceful response,'" and "(5) [t]he absence of serious injury." *Id.,* at 829 citing *Hudson,* 503 U.S at 7; quoting *Whitley,* 475 U.S. at 321.

Moreover, the Eleventh Circuit has stated that "[w]hen evaluating whether the force used was excessive, we give broad deference to prison officials acting to preserve discipline and security." *Pearson v. Taylor*, 665 F. App'x 858, 863 (11th Cir. 2016) (citing *Bennett v. Parker*, 898 F.2d 1530, 1533 (11th Cir. 1990)); *Hudson*, 503 U.S. at 7 (holding that courts are to "give a wide range of deference to prison officials acting to preserve discipline and security."). In addition, the determination "must not be made in the glow of hindsight." *Griffin v. Troy State Univ.,* 128 F. App'x 739, 742 (11th Cir. 2005) (citation omitted). "Prison guards may use force when necessary to restore order and need not wait until disturbances reach dangerous proportions before responding." *Bennett*, 898 F.2d at 1533. Generally, correctional officers are authorized to use force when a prisoner "fails to obey an order. Officers are not required to convince every prisoner that their orders are reasonable and well-thought out before resorting to force." *Pearson*, 665 F. App'x at 864 (internal citation omitted).

The court is also mindful of the Supreme Court's direction that self-serving statements do not create a question of fact in the face of contradictory, contemporaneously created video evidence. Indeed, in *Scott v. Harris*, the Court held that the lower court

"should have viewed the facts in the light depicted by the video tape."  550 U.S. 372, 380-81 (2007).  Moreover, the Court stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."  *Id.* at 380.  Hence, in evaluating the plaintiff's excessive force claims the court has carefully and repeatedly watched the video of the incident.  (Doc. 39-5).

In considering the application of the *Whitley* factors to the instant case, the court recognizes at the outset that there is no dispute the plaintiff refused to follow an order to get in the backseat of the patrol car so that he could be transported from prison to court. Specifically, the evidence shows that Defendant Officer Truman repeatedly directed the plaintiff to get in the backseat of the patrol car.  The plaintiff does not dispute these facts. Rather, he claims that he could not get in the patrol car because of his back injury.  The Court recognizes that the plaintiff discussed his condition with Defendant Officer Truman who sympathized and offered his assistance to the plaintiff in getting positioned in the back seat.  Even so, the plaintiff continued to refuse Defendant Officer Truman's orders to get in the car.  (Doc. 39-2, Doc. 39-3, Doc. 39-5).  Indeed, the Eleventh Circuit has affirmed the "need" for force where the plaintiff first failed to obey an order and then "evaded [the officer's] attempt to get him to comply".  *Miles,* 757 F. App'x at 830 (citing *Bennett,* 898

F.2d at 1533 ) ("The need for the use of force [was] established by the undisputed evidence that [the prisoner] created a disturbance.")

The question then becomes whether the need to ensure the plaintiff's compliance with the order justified the amount of force used. *Miles, id.* In this specific instance, the video evidence shows that, after the plaintiff failed to comply with numerous orders from Defendant Officer Truman, he informed the plaintiff that he would tase him if he would not sit down in the backseat of the patrol car. In *Miles*, the Eleventh Circuit recognized that the "use of a takedown" which included the prisoner being tackled onto his bed and then onto the floor and being slammed against a wall was not excessive when the prisoner "failed to obey a jailer's orders." 757 F. App'x at 829-30. Furthermore, the court notes the plaintiff fails to present any evidence that the force used against him was malicious or sadistic. Indeed, force is deemed legitimate in a custodial setting as long as it is applied "in a good faith effort to maintain or restore discipline [and not] maliciously and sadistically to cause harm." *Whitley,* 475 U.S. at 320-21. Thus, the court concludes that the questions of the need for force and its proportionate use are answered in favor of the defendants.

The court also concludes that the third and fourth *Whitley* factors weigh against the plaintiff. Indeed, a disciplinary report created concerning the incident confirms that the plaintiff "grabbed Defendant Officer Jackson's right hand while jerking and pushing away

from him." (Doc. 65-1 at p. 4). Thus, the court concludes that the officers could reasonably perceive the plaintiff presented some threat. Finally, the court concludes that Defendant Officer Truman's use of force was tempered because prior to using any force against the plaintiff, Officer Truman warned the plaintiff that he would tase him if he did not sit down in the backseat of the car. (Doc. 39-2, Doc. 39-5).

Finally, the court considers the extent of the injury suffered by the plaintiff. Peacock alleges he suffers from a back injury. The medical records confirm that he fell on a concrete floor at work in October of 2015 and injured his back. (Doc. 65-1 at p. 12). He was treated multiple times throughout 2016 for pain resulting from this injury. (Doc. 65-1 at pp.11-18). However, there is no evidence that the plaintiff suffered any injury from being placed in the back seat of the patrol car, or from being tased, or from riding in the car. Accordingly, the court concludes that the medical evidence does not support the plaintiff's allegations of an extensive injury. *Miles,* 757 F. App'x at 830 (No "serious injury" where the only treatment was Tylenol). Summary judgment is thus due to be granted on the plaintiff's excessive force claim.

**3.** <u>**Failure to Protect.**</u>  To survive the properly supported motion for summary judgment filed by the defendants, Peacock must first demonstrate an objectively substantial risk of serious harm existed to him and "that the defendants disregarded that known risk by failing to respond to it in an objectively reasonable manner." *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014) (citing *Caldwell*, 748 F.3d at 1100). If he establishes

these objective elements, Peacock must then satisfy the subjective component.   This requires Peacock to show "that [each] defendant subjectively knew that [he] faced a substantial risk of serious harm.   The defendant must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. (internal citation omitted).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm. *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).   In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "particular threat or fear ***felt by [the] [p]laintiff***." *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).   Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference." *Id*. at 1349 (quotations omitted).).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).   Based upon the court's careful review of all the evidence, the court concludes that the plaintiff fails to offer any proof that being required to ride in the backseat of a patrol car and being required to get in that car posed a substantial risk of injury to him.   The Court is mindful of the plaintiff's claims of severe back pain.   Even so, the record is devoid of any evidence from which the court could conclude that the plaintiff's suffered a substantial injury as a result of the defendants' actions on February 9, 2017.   Accordingly, the Court concludes that summary judgment is due to be granted in favor of the defendants on the claim alleging they acted with deliberate indifference to Peacock's safety.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.    The defendants' motion for summary judgment (Docs. 38, 39, 49) be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  No costs be taxed.

On or before **November 18, 2020**, the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.  Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

DONE this 3rd day of November, 2020.

/s/  Jerusha T. Adams
JERUSHA T. ADAMS
UNITED STATES MAGISTRATE JUDGE